[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 06, 2002
THOMAS K. KAHN
CLERK

No. 01-14542
Non-Argument Calendar

———————————————

D.C. Docket No. 00-02308-CV-C-NE

ANDREW T. WILSON,

Plaintiff-Appellee,

versus

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

Defendant-Appellant.

———————————————

Appeal from the United States District Court for the
Northern District of Alabama

———————————————
**(March 6, 2002)**

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Jo Anne B. Barnhart, Commissioner of the Social Security Administration

("Commissioner"), appeals the district court's order reversing the Commissioner's

denial of Andrew T. Wilson's application for disability and disability insurance benefits, 42 U.S.C. § 405(g). Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied. See 42 U.S.C. § 405(g); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established." McRoberts, 841 F.2d at 1080. The Commissioner's factual findings are conclusive if supported by substantial evidence. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987). We review de novo the district court's decision on whether substantial evidence supports the ALJ's decision. See Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).

Upon thorough review of the record, as well as careful consideration of the parties' briefs, we find that the ALJ's decision was supported by substantial evidence, and that the district court erred by reversing that decision. Accordingly, we reverse and remand the district court's opinion.

The relevant facts are straightforward. Wilson applied for disability insurance benefits on September 19, 1996, alleging disability as of February 2, 1982. His application was denied initially and on reconsideration. Wilson then applied for a hearing before an administrative law judge. At the time of the hearing, Wilson was

40 years old, weighed 135 pounds, had completed bachelor of science degrees in math and physics, and had been a radar and computer technician in the military.

The medical evidence established that Wilson was involved in a motorcycle accident on February 2, 1982, which resulted in blunt abdominal trauma with intra-peritoneal hemorrhage. On January 20, 1983 and May 16, 1984, doctors at the Fox Army Medical Center diagnosed Wilson with the following conditions: (1) malnutrition secondary to short gut syndrome (hyper alimentation); (2) short bowel syndrome with interference in absorption and nutrition secondary to massive small bowel resection; (3) status post multiple trauma including lacerated spleen, lacerated liver, lacerated small bowel mesentery with complete transecting of the superior mesenteric artery and vein; (4) contusion of the head of the pancreas and laceration of the proximal jejunum; (5) instability secondary to fracture of medial tibial plateau with complete disruption of the lateral collateral ligament; (6) incomplete paralysis of common peroneal nerve, left, with foot drop; and (7) status post abdominal sepsis.

Wilson testified at the hearing that he had suffered injury to his bowels and knee, and that he had been required to have a large portion of his bowels and his spleen removed. Several of Wilson's arteries and veins had to be operated on to correct blood flow, and he suffered a contusion to the head of his pancreas and a laceration of the proximal jejunoileal. He had developed short bowel syndrome,

3

which caused him to develop chronic kidney stones and required that he eat six meals per day. Wilson testified that he experienced chronic fatigue and pain for which he had to take pain medication. Other than internal injuries, Wilson testified that he fractured his knee in the accident, which also caused him pain and for which he used the assistance of a cane to walk.

A vocational expert ("VE") testified during the hearing. The ALJ posed two hypothetical situations to the VE. In the first hypothetical, the ALJ asked the VE to consider a person of Wilson's age, education, past work experience, with no more than moderate pain, who suffered the following limitations: (1) the ability to work at only a sedentary exertional level; (2) an inability to stand or walk for more than one hour continuously; (3) an inability to squatting; (4) the need for additional meals; (5) bowel or urinary incontinence; (6) an inability to work at unprotected heights; and (7) an inability to work around hazardous moving machinery. The VE opined that a person with these limitations could not perform Wilson's past relevant work. The VE stated, however, that based on his prior work, Wilson's skills would transfer to certain sedentary positions, such as a computer operator, data entry clerk, or computer programmer. In the second hypothetical, the ALJ asked the VE to assume that Wilson's testimony was credible in all respects. The ALJ then asked if there was other work Wilson could perform. The VE answered in the negative.

In addition to Wilson's and the VE's testimonies, the ALJ considered the

following medical evidence prior to concluding that Wilson did not receive significant medical treatment during the period from December 1986, one year prior to the date he was last insured, through December 31, 1992, five years after the date he was last insured: (1) on August 24, 1992, Wilson's vision was checked at the Veterans Administration Outpatient Clinic and it was determined he needed a new prescription; (2) several dental procedures were performed on Wilson at that same facility; (3) in January 1984, Wilson reported some weakness but was otherwise feeling okay; (4) in August 1984, Wilson reported doing well, with no change in bowel habits being reported; (5) in May 1985, Wilson reported a toe injury while swimming; (6) in August and September 1985, Wilson reported dizziness, a condition that was resolved in October 1985; and (7) in March 1986, Wilson reported he was doing well and weighed 128 pounds, but complained of occasional pain and swelling in his left knee.

Notably, the medical records after December 1986 through early 1992 reveal that Wilson's medical treatment consisted almost exclusively of vitamin B12 shots, with visits in January and February 1989 related to removal of moles, in April 1991 related to an enlarged testicle, and in August 1992, related to pain in Wilson's ankle while riding a bicycle.

The record also reflects that Wilson received a Bachelor of Science degree in math on December 14, 1986, and in physics on June 29, 1992. Wilson maintained

5

continuous course work for nearly all quarters from 1983 to 1992. Although he was admitted to the physics graduate program, he withdrew from that program before completion.

The ALJ concluded that "there is no objective medical evidence confirming the severity of the alleged symptoms arising from that condition(s) or that the objectively determined medical condition(s) were of such severity that they could reasonably be expected to give rise to the alleged symptoms." The ALJ highlighted the following as evidence that was inconsistent with Wilson's allegations of an inability to work: (1) Wilson returned to college in the fall of 1983, 18 months after his accident, where he completed two degrees; (2) in April 1994, Wilson was reported to be eating three meals per day plus snacks and weighed 129.4 pounds; (3) in August 1996, Wilson complained of right shoulder pain and he worked on the computer; and (4) other than consistent visits to receive vitamin B12 shots, the record showed that Wilson did not receive significant medical treatment during the period from December 1986, one year prior to his date last insured, through December 31, 1992, five years after his date last insured.

After describing Wilson's medical history and analyzing its import, the ALJ made the following findings: (1) Wilson met the disability insured status requirements on February 2, 1982, the date Wilson stated that he was unable to work, and continued to meet those requirements through December 31, 1987, his

6

date last insured, but not thereafter; (2) Wilson had not engaged in substantial, gainful activity since February 2, 1982; (3) although Wilson had received numerous injuries which constituted a "severe impairment," Wilson did not have an impairment or combination of impairments listed in, or medically equal to, one of the Listings of impairment found in 20 C.F.R. § 404, Subpt. P, App. 1; (4) on or before December 31, 1987, there was no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms to which Wilson testified; (5) Wilson was not credible in his description of the severity of these ailments; (6) on or before December 31, 1987, the claimant had the residual functional capacity to perform the requirements of sedentary work, except that sitting or walking could not exceed one hour continuously; (7) Wilson was unable to perform his past relevant work; (8) Wilson had acquired skills, including computer skills, that could be applied to meet the requirements of skilled and semi-skilled work functions; and (9) Wilson was not under a "disability," as defined under the Social Security Act, for any consecutive 12 month period at any time through prior to December 1987, his date last insured. The Appeals Council denied review.

On appeal to the district court, the district court reversed the ALJ's decision,

7

holding that the ALJ's decision constituted reversible error. The district court reasoned that based on the combined effects of Wilson's impairments, he qualified under the Listing as having an impairment severe enough to prevent him from doing any gainful activity, and, in the alternative, Wilson met the pain standard. This appeal followed.

The Commissioner first argues that the district court erred when it concluded that the combined effects of Wilson's impairments met or equaled the listing for a finding of disability. The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. See 20 C.F.R. § 404.1525(a). Part A of the Listing of Impairments contains medical criteria that apply to adults age 18 and over.[1] See 20 C.F.R. § 404.1525(b); see also 20 C.F.R. § 404, Subpt. P, App. 1.

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. See 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." See 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the

---

[1] Part B contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18.

Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. See id.

In reversing the ALJ's determination that Wilson did not meet a Listing, the district court stated the following:

> Pursuant to the Listing, Plaintiff is disabled. Although evaluating a section by itself would not qualify Plaintiff as disabled, combining the effects of his impairments does categorize Plaintiff as disabled. After evaluating 20 C.F.R § 404, Subpart P, Appendix 1 5.07 Regional Enteritis; 20 C.F.R § 404, Subpart P, Appendix 1 6.02 Impairment of Renal Function; and 20 C.F.R § 404, Subpart P, Appendix 1 1.03 Arthritis of a Major Weight-Bearing Joint since Plaintiff's accident in February 1982, the objective medical [evidence] demonstrates that Plaintiff is disabled. Although in his findings, the ALJ stated that Plaintiff did not meet or equal a Listing, the ALJ did not discuss the cumulative effects of Plaintiff's impairments. (Emphasis added).

In rejecting Wilson's claim of disability, however, the ALJ specifically stated that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (emphasis added). The ALJ's determination constitutes evidence that he considered the combined effects of Wilson's impairments. See Jones v. Dept. of Health and Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the following statement by an ALJ evidenced

9

consideration of the combined effect of a claimant's impairments: while "[the claimant] has severe residuals of an injury to the left heel and multiple surgeries on that area, [the claimant does not have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4." (emphasis removed)). Therefore, we disagree with the district court's statement that the ALJ did not discuss the cumulative effects of Wilson's impairments.[2]

The Commissioner next argues that the district court erred by applying the pain standard and by accepting as true Wilson's subjective complaints of disabling pain and limitations based upon a showing that a condition could reasonably cause pain and/or limitations. The Commissioner asserts that the district court committed

---

[2] We are also unpersuaded by the district court's alternative analysis of individual sections 5.07, 6.02, and 1.03. Listing 5.07, "Regional enteritis," requires "persistent or recurrent intestinal obstruction evidenced by abdominal pain, distention, nausea, and vomiting and accompanied by stenotic areas of small bowel with proximal intestinal dilation." 20 C.F.R. § 404, Subpt. P, App. 1, Part A § 5.07(A). No evidence exists that illustrates that Wilson experienced the persistent or recurrent intestinal pain or the narrowing of the small bowel (stenosis) required by Listing 5.07. Listing 6.02, which lists impairment of renal function due to chronic renal disease expected to last 12 months, is also inapplicable since there was no evidence Wilson's kidney stones were present prior to his date last insured of December 31, 1987. Finally, Listing 1.03, which lists arthritis of a major weight-bearing joint as an impairment, requires a history or persistent joint pain and stiffness with limited motion or abnormal motion combined with gross anatomical deformity or reconstructive surgery. See 20 C.F.R. § 404, Subpt. P, App. 1, Part A § 1.03. Although Wilson did significantly injure his knee in the accident, no medical evidence exists that illustrates the persistence of limitation or swelling required to equal or meet the listing. Indeed, it appears that April 1984 is the date of the last orthopedic report regarding Wilson's left knee.

10

reversible error by engaging in improper fact-finding; holding that the ALJ did not properly apply the pain standard; finding that Wilson had disabling pain based solely on its conclusion that Wilson's impairments "could" cause pain; ignoring and essentially rendering moot the analysis of the intensity and persistence of pain; and failing to acknowledge that Wilson's pain and disabling limitation must have begun on or before December 31, 1987, and must have lasted continuously to within one year of his application date.

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. See Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

We find that the ALJ properly applied the Holt pain standard, and his determination is supported by substantial evidence. Although the ALJ does not cite

or refer to the language of the three-part test in <u>Holt</u>, his findings and discussion indicate that the standard was applied. Furthermore, the ALJ cites to 20 C.F.R. § 404.1529, which contains the same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. See <u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1214-15 (11th Cir. 1991) (illuminating this Court's history of the pain standard). In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard.

Moreover, the ALJ specifically enunciated the following findings:

On or before December 31, 1987, [the date last insured,] there is no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was precluded from working.

Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain. The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular

12

enlargement. It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured. Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to within one year of his application date.

In short, we find that the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so. Further, the ALJ reasonably decided contrary to the opinion of Wilson's physics professor, since college professors do not fall within the realm of acceptable medical sources for social security purposes. See 20 C.F.R. § 404.1513. Therefore, the third prong of the Holt pain standard was not met. Accordingly, the ALJ's determination was based on substantial evidence and was a correct application of the law, and we conclude that the district court erred by reversing the ALJ's decision.

Next, the Commissioner argues that evidence shows that Wilson met the disability insured status requirement through December 13, 1987, but not thereafter. The Commissioner asserts that Wilson did not show a disability that began on or before December 31, 1987, or that the disability lasted continuously until at least September 19, 1995, twelve months prior to his application date. Further, the Commissioner asserts that the district court failed to discuss Wilson's insured status or give proper recognition to the ALJ's application of this standard, where the ALJ

13

found that Wilson had not shown continuous disability to within one year of the application date. We agree.

In order to be entitled to disability benefits, Wilson must have applied for benefits while disabled or no later than twelve months after the month in which his period of disability ended. See 20 C.F.R. §§ 404.315(a)(3), 404.320(b)(3), 404.621(d). Although Wilson was clearly unable to sustain employment for a period exceeding 12 months beginning in February 1982, the record simply does not reflect that Wilson's conditions and symptoms continued at a disabling level of severity through September 18, 1995, one year prior to the filing of his application. The record also does not show that Wilson received any significant medical treatment during late 1986, with the exception of regular visits to receive vitamin B12 shots. Thus, the ALJ's finding that Wilson did not exhibit a continuous disability stemming from his 1982 accident was supported by substantial evidence.

Finally, the Commissioner argues that the ALJ's conclusion that Wilson regained the ability to perform the requirements of a range of sedentary work activity on or before December 31, 1987 was supported by substantial evidence. Since we have already determined that Wilson does not have an impairment which meets or equals those contained in the Listings and that Wilson has not had a continuous disability, the next inquiry is whether the claimant has an impairment which prevents his past relevant work. This step assesses the claimant's "residual functional

14

capacity" and measures whether a claimant can perform past relevant work despite his or her impairment. See 20 C.F.R. § 404.1520(f); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ found that Wilson could not perform his past relevant work but that he could perform skilled and semi-skilled other work.

If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether in light of "residual functional capacity," age, education, and work experience the claimant can perform other work. See Crayton, 120 F.3d at 1219. The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture. See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). If nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform. See Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

Here, the ALJ's finding that Wilson retained the ability to perform the requirements of a range of sedentary work activity is supported by substantial evidence, including the VE's testimony that a significant number of semi-skilled and skilled sedentary jobs exist for Wilson who had previously worked at a computer. After listing the numerous job opportunities available to someone with Wilson's limitations, the ALJ stated that "Rule 201.209, of the Medical-Vocational Guidelines, used as a framework for decision making with the testimony from the vocational expert, direct that the claimant be found not disabled at any time on or before December 31, 1987 . . . ." The ALJ properly utilized the Guidelines with the testimony of the VE in finding that a significant number of jobs exist in the economy that Wilson could perform. Also, the record is devoid of any objective medical evidence to support Wilson's subjective assertions of pain and extreme limitations. In January 1996, Wilson complained of shoulder pain but there was no indication that the pain was extreme or debilitating. Moreover, the record shows that Wilson had moles removed and made a visit for a rash, but this evidence does not support Wilson's subjective assertions of pain. Because the ALJ's decision was supported by substantial evidence, we reverse the district court and remand with instructions to enter judgment consistent with the ALJ's findings.

**REVERSED AND REMANDED.**

16