[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15213
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-00363-AKK


LISA ANN MOORE,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 19, 2016)

Before WILSON, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Lisa Ann Moore appeals an order affirming the denial of her application for disability insurance benefits and supplemental security income. 42 U.S.C. §§ 405(g), 1383(c)(3). Moore challenges the administrative law judge's decisions to discount the opinion of her treating physician and a chiropractor while relying on the opinions of a psychologist and a physician who examined her and to discredit her testimony that her impairments were disabling. Moore also argues that the administrative law judge failed to consider the combination of her impairments when determining if she was disabled or to evaluate all of the evidence of record when assessing her residual functional capacity. We affirm.

Substantial evidence supports the administrative law judge's decision to discount the opinion given by Moore's treating physician, Dr. John Bivona, in July 2013 that Moore was disabled due to degenerative disc disease and chronic obstructive pulmonary disease. Dr. Bivona's assessment of Moore's back conflicted with his treatment notes in February, May, August, and November of 2012 and in May 2013 that Moore's back pain had decreased and her functioning had increased from complying with her medication regimen. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). And the doctor's portrayal of Moore's pulmonary disease was inconsistent with treatment notes reflecting that in August 2011 her lungs were clear and she did not have any rhonchi, wheezes, or rales and that in February and August 2012 she did not exhibit any clubbing or

2

cyanosis. Dr. Bivona failed to reference any objective medical evidence to support his residual functional capacity assessment that Moore was required during an eight-hour workday to sit for three to four hours, to stand no more than one hour, and to lay down for two to three hours. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). When asked during a sworn statement if Moore's finances prevented her from undergoing additional tests, Dr. Bivona responded that Moore had "not recently" been tested "since back in 2006[] [she] had x-rays that note degenerative changes" and he could "only expect it [to] get worse with time," but that prognosis conflicted with magnetic resonance imaging tests and x-rays taken in February 2006 and August 2013 that showed minimal to mild degenerative changes in Moore's back. In addition, Dr. Bivona's opinion about the severity of Moore's limitations conflicted with the findings of a psychologist, Dr. James Lindsey, and of a physician, Dr. Johnathan Ledet, who examined Moore, respectively, in November and October of 2012. *See Crawford*, 363 F.3d at 1160. Dr. Lindsey reported that Moore walked with a normal gait without assistance and rose from sitting position without obvious difficulty. Similarly, Dr. Ledet reported that Moore could climb on and off the examination table, stand from a sitting position, dress and undress without difficulty, walk on her heels and toes, and rise from a squatted position without difficulty. Dr. Ledet also reported that Moore's lungs were clear and she did not have any edema,

cyanosis, clubbing, or swelling. The administrative law judge had good cause to discount Dr. Bivona's opinion that Moore's impairments were disabling.

Substantial evidence also supports the administrative law judge's decision to discount the opinion of Renee Bowen, a chiropractor, that Moore's degenerative disc disease diminished her ability to work. Bowen's opinion was not entitled to great weight because she examined Moore once in August 2013 for the purpose of completing a functional capacity assessment form. *See id.* And Bowen's opinion that Moore had to lie down for two hours a day was inconsistent with x-rays Bowen had ordered that showed only mild degeneration in Moore's spine. *See id.* at 1159.

The administrative law judge was entitled to discredit Moore's testimony about the limiting effects of her impairments. Consistent with the three-part test used to assess credibility, the administrative law judge found that "the medical evidence establishe[d] that [Moore] [had] been treated for a variety of symptoms associated with [her] alleged impairments," but "the objective medical evidence [had] not validate[d] the asserted severity of [her] impairments and work related limitations" and that "lack of substantiating evidence detract[ed] from [her] credibility." *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Moore's testimony that she could not walk or stand for any length of time or perform most daily activities conflicted with her statements to Dr. Ledet that she

could sit without difficulty, stand for 30-minute increments, and walk for 15-minute periods and that she could cook, clean dishes, shop in short intervals, and climb stairs. And Moore's testimony that she could not work because of back and shoulder pain and her pulmonary disease was irreconcilable with Dr. Bivona's treatment notes about Moore's decreased pain in and increased functioning of her back; Dr. Ledet's findings that Moore retained a normal range of motion in her extremities; and both doctors' reports that Moore did not present with any symptoms of pulmonary disease. That record supports the finding that Dr. Bivona remedied Moore's impairments with conservative treatment. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). The administrative law judge was entitled also to discredit Moore's assertion she could not afford additional testing as being inconsistent with her testimony about using discretionary funds to purchase cigarettes and with her doctors' treatment notes that reflect she declined to undergo tests. Moore also testified she was unable to work because of anxiety and depression, yet she did not report her mental impairments to Dr. Bivona. Both Dr. Lindsey and Dr. Lee Blackmon, a consultant for the Administration, found that Moore suffered a "mild impairment" from her psychiatric conditions.

The administrative law judge considered the combination of Moore's impairments in determining whether she was disabled. In her decision, the administrative law judge stated that Moore did "not have an impairment or

combination or impairments that meets or medically equals the severity of one of the listed impairments." Although the administrative law judge did not mention Moore's anxiety and depression when discussing the listing of impairments, those conditions did not warrant analysis because they did "not cause more than minimal limitation in [Moore's] ability to perform basic mental work activities." The administrative law judge also "careful[ly] considered . . . the entire record," which included "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," when assessing Moore's residual functional capacity. The administrative law judge took into account Moore's complaints about, symptoms of, and treatment record for degenerative disc disease, pain in her back and shoulder, pulmonary disease, and mental impairments. The written decision "evidence[s] that [the administrative law judge] considered the combined effects of [Moore's] impairments." *See Wilson*, 284 F.3d at 1224–25.

Substantial evidence supports the finding that Moore has the residual functional capacity to perform some light work. The administrative law judge accounted for Moore's severe impairments of degenerative disc disease and pulmonary disease that were supported by objective medical evidence and treated her testimony about her symptoms and functional limitations as "partially credible." Based on that evidence, the administrative law judge rejected Dr.

Blackmon's opinion that Moore could perform medium work and determined that Moore could perform only light work during which she could move from sitting to standing for one to two minutes an hour. In the light of the substantial evidence in the record and the vocational expert's testimony that a hypothetical individual with Moore's education, training, and limitations could perform work as a photocopy operator or packager, the administrative law judge had the necessary information to determine Moore's residual functional capacity and her ability to work. Moore argues that the administrative law judge "substituted [her] opinion for" that provided by Dr. Bivona, but the task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor. *See* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.").

We **AFFIRM** the denial of Moore's application for benefits.